# JOLIET STEEL COMPANY.

## V.

# BENJAMIN SHIELDS.

*Master and Servant—Personal Injuries—Steel Works—Track Repairer —Negligence of Servants—Fellow Servant—Special Findings—Pleading —Evidence—Instructions.*

1. The question whether one servant was the fellow servant of others in the employ of the same master, is for the jury.

2. In an action brought by a servant to recover from his employer for the loss of a leg through the alleged negligence of other servants of his said employer, this court holds, that the declaration after issue joined sufficiently disclosed a cause of action; that plaintiff was not a fellow servant of those through whose negligence the accident occurred; that when injured he was in the exercise of ordinary care; that the instructions given for him were not seriously defective, and declines to interfere with the verdict in his behalf.

[Opinion filed December 16, 1889.]

APPEAL from the Circuit Court of Will County; the Hon. C. BLANCHARD, Judge, presiding.

Messrs. GARNSEY & KNOX, for appellant.

Messrs. HALEY & O'DONNELL, for appellee.

UPTON, P. J. This was an action brought by Benjamin Shields, appellee, against the Joliet Steel Works, appellant, to recover damages for the loss of a leg caused by the falling of a mold, in part filled with a steel ingot, called a "butt," upon his leg, crushing it so that amputation below the knee followed, through the alleged negligence of the appellant's servants. The injury occurred on the 9th of July, 1887, in the converting mill of the appellant corporation.

The works of the appellant company, which is a corporation duly organized, are quite extensive. Different departments of its business operations are carried on in different

buildings situate some distance from each other.    The yards
of the corporation are traversed by a system of railroad tracks
located principally in the yards of the corporation, a portion
thereof entering and passing through some of its buildings,
in extent measuring about eighteen miles of railway track.

The appellee alleges in his declaration that he was in the
employ of the appellant company; that his business was that
of a track repairer or foreman of the track-repairing hands
or gang engaged in keeping the network of railway tracks in
order; that a portion of the appellant's works or mill was called
a converter, wherein certain servants of the appellant
were engaged in the handling of molds in the process of the
manufacture of steel; that it was the duty of the appellant to
place such molds in such a position that the same should
not be dangerous to other servants of the appellant engaged
in repairing the railway tracks within such converter, etc.;
that the servants of appellant engaged in such converter so
negligently and carelessly placed a certain mold, partly
filled, called a "butt," that while appellee was engaged in
the performance of his duty in repairing the railway tracks
in such converter, etc., using due care, etc., such mold fell
upon him and injured him, etc., causing the loss of his leg,
etc.    The plea was the general issue and joinder therein.
The cause was submitted to a jury, who found the issues for
appellee and assessed his damages at $3,000, upon which,
after overruling a motion for a new trial, the court below
rendered judgment and from which appellant appeals to this
court.

In the court below, at the instance of appellant, the jury
made a special finding on the facts, to the effect that the ap-
pellee was not obliged to act in repairing the railway track in
the appellant's converter mill in connection with the em-
ployes or foreman of that department wherein such repairs
were made; that in placing the "butt" mold which fell, the
men employed in the converter mill did not place such mold
in the usual and customary manner, nor use ordinary care in
so placing it; that the mold was not tested to learn if it
was liable to fall in the usual and ordinary way, and that the

test which was made, was not such an one as an ordinarily prudent man carrying on the same business would have made under the same circumstances; that appellee's attention was not called to the unsafe condition of the mold before he commenced work in repairing the railway track, nor could he have seen its condition as well as any other employe in the converter mill, had he examined it; that the mold did not fall by reason of the work that appellee or his gang of track repairers did about it. The following facts may be said to be conceded, at least are established by the evidence and are substantially uncontroverted.

The methods in the converting mill are these: At the north side of the building are the converters in which the steel is made; in front of the converters is the semi-circular casting pit, which is perhaps about two feet below the level of the floor of the building; ranged around the pit, close to its edge, are the molds of iron, square in shape, from forty-two to seventy-two inches in height, tapering slightly from the top to bottom, opened at both ends, weighing from 1,800 to 2,400 pounds; they are placed on a "chair bottom," or "sole," which is slightly hollowed in the center, so that the bottom of the ingot is convex in shape; the molten steel is turned from the converter into a ladle and from the ladle is poured into each mold, until the set of eight molds is full; at times it happens that there is not enough metal to fill the last mold; this is called a "butt;" so soon as the metal has chilled enough in the mold to retain its shape, the molds are drawn off, leaving the ingots standing upright in the pit, and the molds are placed on one side to cool. At times the mold will not "strip" and the ingot sticks in them when hoisted by the crane; they are then raised and jarred—"sledged"—to get the ingot out; if it does not come, the mold and ingot are set one side, in front of the empty molds nearest the railroad track so that they may be taken at once to the yard and broken up.

"Butts," stick in the mold as well as full ingots, and this is a daily occurrence. After the molds are set off to cool they are usually tested by the men in charge to see if they will stand, by taking hold of them with a long iron hook and try-

ing to pull them over.    If they stand firmly they are considered safe; if they fall they are safe, of course.

At the east end of this converting mill is a rail bed (so called) about twenty feet square, composed of railroad iron, upon which the molds are set, and they are set at other places around the converter, the floor of which is sand.    There are five narrow gauge tracks running into and through this converting mill, and the north track at the east side, being the one nearest this rail bed, needed repairs, and on Wednesday preceding the Saturday upon which the injury occurred appellee was directed to repair that track at the earliest possible moment, on the ensuing Saturday, if he could.

On that Saturday afternoon, when the last heat (or the last one but one) in that converter mill, on the east side of the pit, was taken off, and the molds swung to the rail bed to cool, in one of the molds was a "butt" from twenty to twenty-eight inches long which stuck in the bottom of the mold, and this was set on the sand floor in front of the rail bed nearest to the rail track which was directed to be repaired (for convenience in removing the same into the yard, if necessary, to be "sledged" or broken up).

This "butt" or mold was about eighteen inches square at the bottom, about sixty-two inches in height, would weigh about 2,000 pounds empty, and was easier to tip over when filled than when empty.

It was left standing on the sand floor, about two feet from the rail track which appellee was directed to repair.    About a half hour after the mold was so placed, the workmen and the employes in the converter mill, having ceased work for the day and gone therefrom, appellee with his force of repairers came into the converter and proceeded to take up a rail on the track nearest this "butt" or mold, as required, and in so doing the mold fell upon his leg, inflicting the injury for which this suit is brought.

Appellant contends:    1st.    That the declaration filed in the case at bar does not state a cause of action.    The declaration simply avers that the injury complained of was caused by the negligence of appellant's servants, and avers, also, that

appellee was a servant of appellant, but does not disclose whether the appellee and the other servants whose asserted negligent acts caused the injury complained of were fellow servants or co-servants, co-associated in such way as to exonerate the appellant from liability for such other servants' negligent acts in case of damages caused thereby.

No demurrer was interposed to the declaration, but issue was taken thereon, and hence every intendment must be taken in favor of its sufficiency, especially after verdict.

We think the declaration after issue joined was sufficient to disclose a cause of action, if the evidence should show all the elements necessary to a recovery. The declaration avers a duty on the part of appellant, its neglect is stated, and an injury resulting from that neglect of duty is also averred. This in substance makes out a case. That appellee was not a fellow servant co-associated with him in such way as to exonerate appellant from liability for the negligent acts of its other servants, may reasonably be inferred, and especially after the special findings of the jury in their verdict rendered in this case before stated. Mechanicsburg v. Meredith, 54 Ill. 84; Smith v. Conway, 16 Ill. 147.

In this view the trial court did not err in refusing to exclude from the jury, on appellant's motion, the evidence offered by the appellee in that court on the hearing.

The question whether the appellee was or was not a fellow servant with those engaged in the converter mill of appellant so as to render it liable for their negligent acts, as well as the question whether the evidence sustains that verdict, were questions of fact for the jury. C. & N. W. Ry. Co. v. Moranda, 108 Ill. 576; C. & E. Ill. R. R. Co. v. Geary, 110 Ill. 383; C. & A. Ry. Co. v. Kelly, 21 N. E. 203.

After a careful examination of that evidence, we are unable to say that the jury was not justified under the rules of law in rendering that verdict and the special findings thereof for the appellee.

The evidence does not disclose so clear a case of co-association in their employments between the appellee and the other employes of the appellant in the converter mill, whose neg-

ligence caused the injury complained of, as that we are able to say that the appellee failed to make out a case against the appellant. Indeed, we think the evidence justified the findings of the jury under the rules of law.

Complaint is also made of appellee's instruction numbered two, given by the trial court.

We have examined that instruction with some care, and in our judgment it announces substantially the correct rule of law in this State upon the question of fellow servants. It contains the true hypothesis of association to create or avoid liability, upon the doctrine of *respondeat superior*, and states the rule firmly established in this State upon that subject, as laid down in the Moranda, Geary and Kelly cases, above cited. The fact that this instruction refers to the appellee as belonging to a "gang of track laborers," when he was in fact a foreman thereof, could make no difference. If the instruction was not as full as it might have been it was substantially the law, and with the very full and favorable instruction given on the part of the appellant, we think the jury could not have been misled in their investigations or findings in this case. The other instructions given for the appellee, of which complaint is made, seem to have been framed upon the allegation of the second count of the declaration. These instructions also contain the legal and correct hypothesis of co-laborers in the same association, or fellow servants, in this State, as stated in the cases before referred to.

Upon a careful examination we think the evidence fairly shows that the appellee was in the exercise of ordinary care. He was not apprised in any manner of the fact that the standing mold contained an ingot or was a "butt" mold, which made it liable to fall over, and he had no reason to suspect that such was the fact, and in this used ordinary care. If the mold had been empty, under the evidence, it would not have fallen or occasioned the injury complained of. If it had been filled, appellee could have seen that it was so and have avoided the danger. The fact is fully established that an empty mold placed as this "butt" mold was, in the sand, would stand so firmly as to require two or more men to pull

it over; while a " butt " mold, or one filled or partly filled with steel, in consequence of the concavity of its base, could be easily overthrown. Under the evidence it seems to us, that the appellee had the right, and he was justified in regarding the mold as an empty one, and to so conduct himself in the discharge of his duties as an employe of the appellant in the repair of the railway track, as he had been directed to do.

It does not follow because the appellee did not have the mold removed as offered, that he knew of the danger, or had any information of the actual condition of the mold. It can not be supposed appellee would knowingly put in peril life or limb, neither does it follow that the appellee assumed all risks in not requiring its removal. It is abundantly manifest that the appellee did not suspect its dangerous condition. We have carefully examined this record, and we find no error, in our judgment, sufficient to authorize a reversal of the judgment of the Circuit Court, and that judgment is, therefore, affirmed.

*Judgment affirmed.*