JOLIET STEEL COMPANY

v.

BENJAMIN SHIELDS.

*Personal Injuries—Negligence of Defendant—Fellow-servants—Instructions.*

1. In an action brought by a servant against his employer to recover damages for an injury received by him through the fall upon him of a mold containing a so-called butt, being a part of a steel ingot, this court holds that the evidence justified the finding that the employes who left the butt in the position from which it toppled onto appellee were guilty of negligence, and that they were not fellow-servants of appellant.

2. It clearly appearing from the evidence that the appellee and the servants guilty of negligence never worked together, or under such circumstances that a mutual influence on each other's care was possible, there was no basis for the claim that they were fellow-servants, and possible errors in the instructions on that question could not therefore have injured appellant.

[Opinion filed December 12, 1892.]

APPEAL from Circuit Court of Will County; the Hon. DORRANCE DIBELL, Judge, presiding.

Messrs. GARNSEY & KNOX, for appellant.

Messrs. J. W. DOWNEY and HALEY & O'DONNELL, for appellee.

MR. JUSTICE CARTWRIGHT. This case was before this court on a former appeal and was reported, 32 Ill. App. 598. When the case was here at that time, this court was misled by a supposition that the cases of I. C. R. R. Co. v. Simmons, 38 Ill. 242, Mechanicsburg v. Meredith, 54 Ill. 84, Barker v. Koozier, 80 Ill. 205, L. S. & M. S. Ry. Co. v. O'Conner, 115 Ill. 254, and Keegan v. Kinnare, 123 Ill. 280, were similar to this, and in view of the special finding of the jury and of those cases, the declaration was held sufficient after verdict. On appeal to the Supreme Court the declaration was held insufficient after verdict on account of a failure to allege that plaintiff, who was a track repairer, was not a fellow-servant with those who set up molds of molten steel in a converting mill. The judgments of this court and the Circuit Court were therefore reversed, and the case was remanded to the Circuit Court, with leave to plaintiff to amend his declaration. Joliet Steel Co. v. Shields, 134 Ill. 209. The case was reinstated in the Circuit Court and the declaration was amended to conform to the views expressed in the opinion of the Supreme Court. The general issue was pleaded, and the cause was again submitted to a jury, resulting in a verdict for plaintiff for $5,000, upon which the court, after overruling a motion for a new trial, rendered judgment.

The only evidence introduced was on the part of plaintiff, no evidence being offered by defendant. The facts appearing from the evidence are as follows: There were about eighteen miles of railroad tracks of the Joliet Steel Com-

pany in its mill yard and buildings. Shields was foreman of a gang of men who attended to these tracks and made any necessary repair of them in the mill yards and in the converting mill, rail mill, machine shop, foundry and blast furnace where the tracks ran. When repairs were made on tracks in a building, it was done when the men employed in such building were through with their work, and the repairs in the converting mill had always been made on Sunday, when the men in the mill were not at work. In this converting mill steel ingots were made from cast iron. There was a casting pit in which were arranged the molds in which the ingots of steel were cast. These molds were of cast iron, ranging in height from four to six feet, open at both ends, about eighteen inches square at the bottom and tapering very slightly to the top and weighing about a ton each. Each mold was set in the casting pit on a square plate of iron which was concave on the upper surface, making the ingot, when cast, convex on the bottom. They each held, when full, about a ton of steel. The ladle was calculated to hold about seven tons, and to fill a set of the molds at each charge; but it sometimes happened that the last mold would be only partially filled, and this was called a butt mold. Adjacent to the pit was a large crane, and after the steel had set in the mold so that it would retain its shape as an ingot, the molds were pulled off from the ingots by means of the crane, and the ingots were left in the casting pit, still at a white heat. The molds were then swung around and placed on a bed made of railroad iron for the purpose of cooling them off. A narrow gauge railway track ran within two or three feet of the south edge of this rail-bed. It often happened that a mold could not be drawn from the ingot, and in such case it was lifted by the crane and racked about to get it off the ingot, and if that method proved unsuccessful, the mold with the hot metal in it was set down on or near the rail-bed and allowed to cool, after which, if the ingot could not be got out, it was sent to the scrap pile. When a mold was drawn from the ingot, the mold being square on the bottom, would stand on end securely. If the mold was not drawn and was set out of

the pit, the bottom of the ingot being convex on account of the concavity of the plate on which it was cast, it would not stand as well as the empty mold. If a mold containing metal did not stand securely it was necessary for safety to pull it down on its side.

On Saturday, July 9, 1887, the last heat of the day had been taken off and one mold in that heat contained a butt. The molds were drawn from the ingots, except in the case of the butt, which stuck in the mold. The empty molds were hoisted out of the pit and set on the rail-bed, and the mold containing the butt was also hoisted out and set on or next to the rail-bed. These molds were very hot. About five o'clock, after the men in the mill had quit work for the week, Shields came into the mill in pursuance of orders and of his duty to repair a rail in the track next to the rail-bed, which had become warped by the heat. As the work would consume only about fifteen minutes, he chose to do it then rather than wait until Sunday. He measured the rail to get its length, went outside the mill and measured for a rail to be put in, and gave directions to some of his men who were left out there about cutting it off, and then returned into the mill and commenced shoveling at the rail to be repaired. The superintendent of the mill came along and asked him if the molds were in his way, and he said that they were not, but that it would be cooler if they were out of the way. While he was shoveling the dirt from about the rail the mold containing the butt, without any notice or warning, fell over and struck him on the side, and crushed his foot and ankle so as to render amputation necessary. He had no notice or knowledge that there was a butt in the mold which would render it liable to fall.

It is contended that these facts do not afford proof of negligence on the part of the men who placed the butt mold where it was. We are not able to agree with counsel for appellant on that question. The evidence shows that the base of the butt mold was convex and that it was thereby rendered unstable. The men who put it there knew its condition, and it was a matter of constant experience with them that it required care to make such a mold secure in its posi-

Joliet Steel Co. v. Shields.

tion. It was their duty to give attention to ascertain whether it was secure, and if not secure, to make it so. Shields could not tell without investigation, any difference between a butt mold and an empty mold. He had no reason to investigate, but had a right to assume, in the absence of notice, express or implied, that the men who put it there had performed their duty. It fell within fifteen or twenty minutes after it was set there, without any intervening agency to produce such a result. There was no reason apparent why it should fall, except the natural one that it had not been set with reasonable care, and the jury were justified in referring its fall to the only apparent cause.

Objection is made to the action of the court in giving and refusing instructions on the doctrine of fellow-servants. It is to be observed in connection with these instructions, that there was no evidence in the case which could have justified the jury in finding that the employes in the converting mill, whose negligence caused the injury, were fellow-servants with Shields. There was no conflict in the evidence, and it was conclusive that they were never associated together in their employment at this or any other time. Shields and his gang never worked in the converting mill when the other employes were there. There was no mutual influence possible, for they performed no duties together, and so far as appears, they never met or saw each other. It is not shown or suggested how, when or where Shields was ever associated in employment with any of the mill hands. The criticism made on the instruction given is that it limited fellow-servants to those in the same line of employment. If subject to such criticism it could not harm appellant, for the jury could not have found that the mill hands were fellow-servants with Shields on the uncontradicted evidence in the case, if the instruction had been made to conform to the argument for appellant. As applied to the case it could not injure appellant. The instructions asked by appellant and refused, on the doctrine of fellow-servants, were not correct, and were properly refused.

The judgment will be affirmed.

*Judgment affirmed.*